173992 Marshall Garber, State of Ohio v. Heriberto Menendez Arguments not to exceed 20 minutes to be shared by appellant and amicus, 20 minutes for diapole Mr. Bosset for appellant Good afternoon, may it please the court. I'm Jacob Bosset and I represent Marshall Garber in this action I am going to please reserve three minutes for rebuttal time. I'm going to be splitting my time with the State of Ohio We're going to have ten minutes each and so I'm going to please reserve three minutes for rebuttal time The threshold issue in this case is whether the tolling provision for out-of-state defendants Ohio Revised Code 2305.15 implicates the dormant commerce clause as applied to the defendant in this particular case the trial court held. It challenges the scope and the breadth of the dormant commerce clause as applied to people moving in between states without really anything else other than moving between states The fundamental issue really pursuant to Bendix v. Midwesco, which is the seminal case with respect to this statute The Supreme Court wrote that the defendant must be engaged in commerce It really sets a threshold issue for this case as to whether or not the defendant was in fact engaged in commerce when he left the State of Ohio for the purposes of retirement and moved to Florida Does it make any difference that in Bendix one party was outside the state to start with? I think it does. I think it makes a difference because in that particular case you had a prototypical interstate transaction You had an Illinois company coming that was transacted with an Ohio company to come into Ohio to perform a service Subsequently left the state, was not registered with the State of Ohio, did not have an active business in Ohio Did not have a process server registered with the State of Ohio And I think that the Supreme Court did in fact draw a distinction there It drew the distinction that this was an interstate transaction Therefore the dormant commerce clause applies to this transaction and applies to invalidate Ohio Revised Code 2305.15 All subsequent litigation with respect to this statute and post-Bendix has taken that a step further each time The Northern District case, Tessar v. Hallis, about two years after Bendix Can I ask you a question about Bendix and corporations? Does the statute work the same way then, today, in terms of corporations or has it changed at all? I'm not sure that with respect to Well maybe another way to put it, at the time of Bendix, did it apply equally to Ohio and non-Ohio corporations? So for example, you're an Ohio corporation, you do something that creates a tort And then the Ohio corporation leaves the state Would it have told then? Yes, I think it would So it wasn't directed just at out-of-state companies? It was not And I think that in fact if you would look back, sort of the jurisprudence with respect to this statute Going back to 1971, Seeley v. Expert, which is an Ohio Supreme Court case Interpreting this statute, you had a motorist, an individual, but someone from Michigan coming into Ohio Having a car accident, the statute of limitations being told when that person left the state and going back to Michigan I think the same sort of principle would apply with respect to corporations So what is the difference? In Bendix, they're doing classic commerce and people retiring is not commerce I mean, that's kind of a funny thing to say I mean, Florida would really be hurt without retirees It seems to affect their commerce, doesn't it? I think that that may be the case That in fact that his retirement to Florida Well, I think what the statute imposes is a burden upon the defendant in this case The fact that he simply moved between two states and takes his money to Florida First of all, it's a wholly interstate, I think, transaction between him and Florida or him and Ohio But furthermore, I think that the statute itself does not regulate It's not regulating commerce per se in this transaction There's no commerce being regulated by the statute as there was perhaps in Bendix Where you have an out-of-state corporation coming into Ohio to do business But I mean in Bendix, they said they might think of it as facially discriminatory Justice Scalia thinks it's facially discriminatory But then they proceed to do this other test That whether you call it pike balancing or what you want to call it That's the same test that's being urged upon us here It is And I think that the statute does in fact survive pike balancing as well I think it is much the same In fact, if we're looking at the economic sort of burdens, if any, that exist in this particular case That what you see is that they're very, very low in terms of any interstate regulation being regulated by this particular statute I understand Justice Scalia's concerns in his concurrence I think that he finds it facially discriminatory under the Commerce Clause I think what the majority of the court did is apply pike balancing And in doing so, found in that case that because you had an out-of-state corporation coming into Ohio to do work here And it was regulating commerce more so than it would be in this particular case Where the defendant is simply moving between two states for the sake of retirement In this case, any economic Why is Ohio keeping this law the way it is? I understand why the court is not reinterpreting it That seems pretty aggressive But what's the point it's serving today? I think what it's serving, and I think the state will probably discuss this in its time as well But what it protects is its citizens from out-of-state defendants that come Because it's a hassle to track them down and serve them? To locate them, to serve them, all within the statute The long-arm statute, you could serve them, right? That happened here It could I think that the long-arm statute certainly is a measure that also protects citizens But this statute has been on the books for decades And the state legislature hasn't taken it upon itself to change it in any meaningful way It has existed, it has been repeatedly upheld by the Ohio Supreme Court As recently as 2000, post-Bendix The Supreme Court, in a case, Johnson v. Rhodes Held that the statute is applicable when the defendant leaves the state for vacation So leaves the state for 10 days and goes to Kentucky It held that that was a non-business reason for leaving the state And said that the statute is applicable under those circumstances Well, would the fact that there might be alternative ways to accomplish something Necessarily impact the Commerce Clause argument one way or the other? I don't believe so Only because the state has found that this interest is something that needs to be protected As recently as 2000, the Supreme Court of Ohio has upheld the statute as constitutional That it's applicable And in doing so has And given that the legislature has had at least almost 18 years Since the most recent Supreme Court decision And nearly 30 years since Bendix to, in fact, change the statute some way or another And has not, indicates that this is a statute And this is an interest that the state has an interest in protecting All right, thank you, I'll get your rebuttal Mr. Murphy  This case, I guess I'd like to start with Bendix And explain why I think this case is distinguishable from Bendix Bendix was a classic interstate commerce It was an out-of-state entity transacting business with an in-state entity And so you could, it fell within the core of the Dormant Commerce Clause Which is about economic protectionism And about state legal rules that benefit in-state businesses At the expense of out-of-state businesses There, the statute of limitations would have run If it was an in-state business that provided the same exact boiler And the same exact services The only reason it didn't run is because it was an interstate commerce That case is not like this one in the sense of the transaction that is actually going on here An Ohio doctor providing Ohio services to an Ohio patient That's actually an intrastate transaction So that component of it is off the table And thus the Dormant Commerce Clause is going to become some type of Lachnerian assessment of the reasonableness or the wisdom of legislation Since it's interstate commerce How do we think about this just in terms of doctrine? So the way you describe Bendix I would say you're describing as a case of facial discrimination At least as applied to corporations And I think that the way to describe this case There's a couple ways There's either, it's not commerce that's even implicated here So that's like the McBurney way The Virginia public records laws Clearly discriminated between in-state and out-of-state residents About who could obtain public records But the Supreme Court said Well that's not even about economics The Dormant Commerce Clause isn't even implicated It's about burdens on individuals And so it's a privileges and immunities question So we think that that's the more appropriate way to think about it Because here it's a burden on the individual But I don't think you can The classic case for the Dormant Commerce Clause Is you take two entities Providing similarly situated defendants Providing similar goods or services And one has benefited and the other has not Here I don't see what that is The only transaction that is going on As I said is an in-state transaction That's why the defendant in this case Has to instead of relying on the economic commerce That is that issue in the suit Has to rely on the fact that after that commerce took place The defendant relocated to Florida And so if the test is going to be Any individual moves out of state Then any in-state versus out-of-state distinction Could be said to burden that move As I said take the McBurney example That would burden a Virginian who decides to move to Maryland Because if the Virginian decides to move to Maryland The Virginian can no longer obtain Virginia public records The funny thing about it is The doctor arguably She now has a claim being in Florida It's a real disincentive to leave Florida With no estate tax Right? If you leave Florida You might be subject to an estate tax In fact you move back to Ohio You'd be subject to an estate tax in Florida No estate tax In fact the older you get The more relevant the point is Any difference between states could burden moves You could give examples forever The Baldwin case Which upheld differential fees For hunting licenses for Montana elk That would burden a Montanian's decision To move to Minnesota Because if they move to Minnesota They have to pay more to hunt Montana elk The Sons case It made me realize I might be able to get rid of these Out-of-state fishing license fees I didn't realize that was at stake In-state tuition versus out-of-state tuition That's another example In-state tuition burdens my move to out-of-state I'll have to pay higher fees If I want to go to a university in the state The examples are very numerous I don't know that there's Pike balancing When's the last time the court Because I think of Bendix as a pike balancing case And of course Bendix is this statute Have there been cases since then That have invalidated laws under pike balancing? I'm trying to figure out What the most current example of that The two most recent cases That actually undertook pike balancing I believe were United Haulers The trash case And then also Davis Which is the in-state bonds get tax exemption But out-of-state bonds do not In both of those cases They upheld the distinctions Under applying pike balancing The court is very split on Whether pike balancing should apply And so I can't recall if in both examples Both instances the section was Joined by the full court But those are the two most recent examples And they upheld it If pike balancing applies here It seems to me As Judge Easterbrook said In the national paint case that we cited It should be essentially rational basis review When the burdens on interstate commerce are so low So pike balancing is balancing burdens and benefits When burdens are really low The justification that the state has to provide Should also be very low Essentially going back into rational basis review That we apply typically to economic legislation Here I think it is rational basis review Because any other rule would suggest That any in-state versus out-of-state distinction Would burden commerce Because it burdens an individual's choice On where to live I guess that's the pragmatic reason Why I don't think the move alone Should trigger the Dormant Commerce Clause I guess the legal reason Is what the court has repeatedly said The Dormant Commerce Clause Is about economic protectionism And I'm having a very difficult time Unlike in Bindex where it's very clear Out-of-state corporation providing a boiler Is burdened in a way That an in-state corporation Providing the same boiler Would not be burdened In Bindex that is the effect of the statute here With respect to this move That wasn't really true The in-state boiler seller Gets hurt by the statute The minute it relocates In other words it sells the defective boiler It moves and now there's Well I guess the distinction a little bit So the in-state corporation Wasn't under the foreign corporation law So the foreign corporation law Was the law that said If you're a foreign corporation You have to register a service of process And the fact of registering service of process Made you subject to general jurisdiction The in-state entity You're right as long as they stayed in-state The statute of limitations would run They weren't under the foreign corporation law They were under a different provision But I think I would readily admit That as part of our own Domestic corporation provisions That they'd also have to register in the same way But the in-state corporation As long as it stayed in-state If it was an interstate transaction The statute of limitations would continue to run I guess the third point I would make Is that this is really It's not really burdens on interstate commerce It's burdens on the defendant And so when you think about Burdens on individuals crossing state lines That's more of a privileges and immunities question And not a dormant commerce clause question But in the privileges and immunities context McBurney also dealt with The privileges and immunities clause The Virginia public records law The court said that Distinctions between in-state and out-of-state Are problematic under the Privileges and immunities clause Only with respect to fundamental rights And the problem for the defendant in this case Is that for a long time Including Bindex Including the G.D. Searle case that we cite Statutes of limitations have not been deemed fundamental And so the court has a long Or at least two cases There's old cases So another doctrine question You know there's the facial discrimination There's pike balancing And I've always thought Whenever I've looked in this area That there's kind of an in-between That there's laws that are Facially neutral But have protectionist effects Or are hiding a protectionist purpose Do you agree that there's really three categories Or do you think there's just two? So I think that The Supreme Court has said There's effectively two But they said is there But the second being pike balancing? Yes The first being discriminatory Facially discriminatory And if the effect is so broad It could be deemed effectively Facially discriminatory In this case though It's hard for me to see What effect is on commerce At least as applied To the facts of this case So I guess Though getting back to the Statute of limitations idea The court has twice Upheld distinctions between In-state individuals And out-of-state individuals With respect to the Privileges and immunities clause And so if that is the relevant Box we think we are in We think that the distinction Is perfectly fine I guess the last point I'd like to make is Judge Sutton you mentioned What is the justification for this law Pre-Bindex A very similar New Jersey law Was challenged under the Equal protection clause That was the G.D. Searle case That we mentioned And the court suggested that There was a rational basis for the law Even when you could serve an individual Under the long arm statute It was essentially the justification As you mentioned When a person is outside of the state They might be more difficult to locate And I think that I would agree The absconding and concealment portions Of the law Are perfectly fine And a case-by-case law Would be fine of If the person was very difficult to locate Then that would be a reason to Toll the statute of limitations And the state can have an interest In just judicial efficiency Rather than having On a case-by-case basis Judges assessing whether The out-of-state defendant Was sufficiently difficult to locate Just having a bright line rule That cuts down on costs And what not And that itself Administrative concerns Can be a justification as well Your light's almost on Just one quick question Could a person in Ohio Utilize the Ohio long arm statute In connection with a tort claim If the statute of limitations Had expired on that tort claim? So Does your hypothetical Is your hypothetical premised on The notion that the tolling statute Has not somehow Applied to stop The statute of limitations From running? Because if it was An out-of-state person The statute of limitations Presumably would not have run But the long arm statute Could Could No doubt can reach Out-of-state defendants But That's a case Moved in advance But there's The The statute still controls It doesn't extend the life Of the long arm statute Unless you have The interstate movement That is involved That's right So the long arm statute And this statute Are different in the sense That the long arm statute Is the way that Ohio Can reach outside of Yes Orders to serve people And Ohio statute And it's The way to serve people Is in its rules And that would apply Regardless of whether The cause of action Had run or not But they may or may not Have a statute of limitations defense If there are no further questions I'd ask the court to reverse Thank you Mr. Norky May it please the court My name is Kevin Norky I represent the defendant Appellant Appley in this case Herberto Menendez M.D. The Just to focus on the questions That have been posed so far The beginning point here Has to be with the facts In this case That when Dr. Menendez retired There's no evidence That he had knowledge Of a pending lawsuit And that he wasn't Merely moving money He wasn't absconding He wasn't concealing He moved to Florida He just moved to Florida Period He relocated his residency We can discuss the purpose As to why he moved Being due to retirement And that certainly has Commerce clause implications It impacts the commerce clause Retiring from the state of Ohio To the state of Florida If we were to find that It does not If there was a finding That it does not Florida might As you mentioned Have something to say about that So there is a very clear impact In interstate commerce In this case But why I mean This is what seems like The hardest part of your position Just put the doctrine All to the side Just All states have Create benefits For people that live in the state They can be tax benefits They can be reduced costs For licensing fees In state tuition Being in a state Without an estate tax Now that is going to Restrict somebody But yet no one thinks that Restricts interstate commerce Well the move from Ohio To Florida For the benefit To the physician himself To the person The defendant Or the benefit to the state To which he goes Are very clear impacts On commerce Yeah I mean He leaves Ohio He loses a benefit That the one year period would run He leaves Florida He loses a benefit No estate tax So he I mean I am just Making the point The argument It just seems to prove too much Because all states have Unique benefits for their citizens And Under your theory of the case That restricts interstate commerce Because they are disincentivized to leave Because they will lose the benefit Well that is where the balance is There is an incentive for him to leave First of all he is not aware That there is a lawsuit pending So he is not aware That he is giving up or surrendering The one year statute of limitations It is an unknown And so when he leaves It is for the benefit Of the ability to retire Well how did this affect commerce If he didn't affect his decision at all You just told me he didn't Oh it does I didn't mean to suggest that It does affect his decision I mean people retire from the state of Ohio Not merely for the warmth That is a big reason To go south But there are tax implications That benefit the individual And they benefit the state That he goes to So any tax that he pays down there His residence down there I am granting you there is some commerce I agree even retirement has commerce I get that Well the implication of the commerce clause Is merely just because of that It is the burden that we are talking about The commerce clause is implicated By the actual movement I mean there is a long line of cases Going back to Edwards And Heart of Atlanta Motel That we have cited in our brief That do talk about the movement of people Across boundaries And that does in and of itself Implicate the commerce clause The question then is whether Any restraint on their ability To move across state lines Is discriminatory And an impermissible burden On the commerce clause And that is really the discussion That we are having at this point And with regard to that Doesn't pike balancing usually require Some evidence That there is a burden I mean this was a motion to dismiss case How do we I mean my first instinct is I don't think there is a lot of Ohio doctors That are having second thoughts Retiring to Florida Based on the tolling provision That would really surprise me Well so in that so I think the point you are making is That there are a lot of Ohio physicians Who might be interested in retiring south Yeah I don't I just don't I'd be really shocked that this would Disincentivize a single person Even if they were told about it Just as they were entering Cincinnati Realize what's about to happen I just think they would think you were kidding So the idea really is On whether or not These physicians can be served Within the period Statute of limitations That applies to them And in all the cases That we've looked at Whether it's Bendix, Tessar And even Johnson Issues at Johnson That where the physician moves Relocates And it implicates It implicates Commerce clause The benefit Or I'm sorry The discriminatory effect is in fact That physicians would be prevented They would have to buy different insurance They'd have to buy a tail insurance There may be other implications Here and consequences Where they do have to now Be concerned about that In addition to also knowing That there's a long arm statute That subjects them to The jurisdiction of the state of Ohio So that's part of the balancing And to It would be an unreasonable burden For physicians now In their estate planning Do I leave Ohio tonight Or do I not leave Ohio Have to be concerned about whether I have to get tail insurance That goes for perpetuity So the idea here is that They are subject to the Potential lawsuit Because the statute of limitations Does not run Ever Their own estates May be subject to a lawsuit At some point The statute of limitations Well that's something that I quite get what you're saying But it only applies to Services provided During the last year in the state Right Because everything they provided More than a year before they left The statute would have run  Because they would still be there Except in the case of Perhaps Dr. Menendez Who's a pediatrician Who where the statute of limitations Does not run Until the patient And here The issue here was Regards care that was provided In 2010 And Mr. Garber didn't become 18 Until 2013 Didn't file a lawsuit Until exactly one year After that And so We have a time frame of You know Five years there Where the doctor is still subject Is that how medical malpractice Policies work though I thought they would cover a time They don't They don't Concern themselves with Tolling of statute of limitations They You have coverage for A time you provided services And if you provided services Within that time And you're sued You invoke the policy So that's a difference Between a claims made policy And an occurrence policy And it depends on what you have So insurance companies Provide different products To physicians Based upon their services You could have the wrong one For this particular problem It could happen And so These are consequences That are very important To the physician Making decisions about Where to go Where to retire When to retire If they want to retire And it's not necessarily About retirement I mean the physician Could have retired To Cleveland Maybe he likes You know The shores of Lake Erie He wants to go up there The point being is that It's the relocation That's important That He left permanently The state of Ohio And he went somewhere else And it wasn't to abscond Or conceal himself And I think the retirement Is part of the balancing Consideration But the fact that He left permanently Is important In the consideration here The Johnson case Touched on that The concurrence In that opinion Did touch on whether Because the statute Didn't mention You know That they left temporarily Or for business purposes Why expand it To that length To that extent And in fact It is about movement It's about the movement Permanently Of an individual From the state of Ohio To Florida And I think that's probably The paramount issue Are you focused Just on Commerce Clause Or are you Considering Right to travel Privileges and immunities How do you want us To think about this Well I know you want us To think helpfully about it But what doctrine Would you You know In reviewing the cases And preparing for the motion To dismiss You know I reviewed the Commerce Clause cases Bendix, Tessar And Johnson in particular And the Grover B. Barts Case And found that The The cleanest Most clear Avenue here And the best Well the best avenue Was through the Commerce Clause analysis And I And this is probably A reflection of my own limitation But I felt that Privileges and immunity Clause analysis Was a little More difficult And required Perhaps more Evidence More information Doesn't mean it's off the table In the future If there's a motion You know The case is remanded And we have a motion For summary judgment Opportunity But at this point You know The issue would be That we've raised Is that Application of this Tolling statute Under these circumstances Is unconstitutional Under these specific Circumstances Do you have any cases From other states Where the tolling Provision has Created this kind of problem Vis-a-vis individuals Well it's No I don't And The reason is because There's really a patchwork Of different types of cases So for example I think in Missouri The Tolling statute Applies because Service has to occur Before the statute Of limitations expires So In that regard That makes sense That you would have A tolling statute To allow a plaintiff To serve a defendant Within a set period of time And if that defendant Is out of Out of town Or out of state For any particular reason It would toll So you see That sort of That sort of interplay But for the most part There aren't A lot of states That have This broad Of a Tolling statute And I can't Tell you what they are Off the top of my head That it goes to In perpetuity Is that A feature of your I mean Do you think That's a strength Of your argument here That arguably Goes Yes Right Yes I think to subject A party to Infinite Potential liability Without the benefit Of a statute Of limitations That anybody else Has the benefit of You know Non-residents Have the same benefit And in Ohio We have a long arm Statute that Permits I mean That goes back To the point There's no fundamental Right to a statute Of limitations No there's no fundamental Right to it But it is For everybody It is a State of nature We're all subject To liability And to perpetuity It's only because Of the grace Of creating These limitations Periods That we're not Yeah I think that The You know It's recognized That In I think All of these cases That statute of limitations Is not a fundamental right But it is necessary For the functioning Of Commerce Of An individual's ability To plan In the future Project Look at that Young case This is the Virginia public Records case I don't want to ask You about it Okay All right Aware of it I saw it I looked at it And I didn't see How it applied To this case Yeah okay No worries So I think there are A couple of other Just Quick points To make And that is You know The distinguishing Feature here Is that The most recent Analysis Of this Statute In the state Of Ohio Is really With the Johnson Court At the highest Level And it did Recognize The Ruling With Ruling By Bendix And Tessar And as The District Court Here Recognized Is that The Requirement That the In order To Told the Statute Of Limitations And apply It for Out-of-state Residents Is that The Absence Needs to Be Temporary And for Non-business Purposes Both And Judge Gone Found that Based upon The Pleadings In this Case Is that Dr. Menendez Was Permanently Gone From the State And as To And felt That Was Adequate For Her Opinion And I Think As We've Touched On The Idea That The Reason Why He Moved If We Need To Go There For This Analysis Is Retirement Is And has To be Considered As An Impact On The Commerce Clause And so Based Upon The Lower Court Analysis Of Ben Dix And Some Of The Other Cases That We Mentioned In Our Brief Such As Grover We Would Ask The Court To Affirm The Lower Court Decision I Wonder If You Could Take Off The Circumstances That You Say Circumscribe This Statute In An Unconstitutional Form What Do You Say They Are In These Circumstances What Are These Circumstances Would Be The Statute Would Be Unconstitutional Under These Circumstances Where A Party Is Permanently Gone Not Absconding Not Concealing A Minimal Disservice And I Would Also Suggest That The Reason For The Move Is For Retirement Which Impacts The Commerce Clause Each Of These Is Crucial I Don't Think The Last Is Would The Impact Be Any Different Suppose The State Has An Offense That Has A 20 Year Statute Of Limitations That Would Still Keep Alive The Same Problem For The Fellow Who Moves To Florida Wouldn't It Would But To Florida Wouldn't It Keep Alive The Same